Edward ERVIN and Keith
Lilley, Appellants,

v.

Bonnie JAMES, Appellee.

No. B14–93–00983–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 10, 1994.

Rehearing Denied March 31, 1994.

Barbara Baruch, Houston, for appellants.

Logene L. Foster, Sugarland, for appellee.

Before SEARS, LEE and MORSE (Sitting by Designation), JJ.

## OPINION

MORSE, Justice.

This is an appeal of the denial of a motion for summary judgment. Bonnie James sued Edward Ervin and Keith Lilley for assault and negligence. Ervin and Lilley, who were deputy constables, moved for summary judgment on the basis of qualified immunity. The trial court denied the motion, and they appeal. We reverse.

The facts are derived from the affidavits of Deputies Ervin and Lilley. James' affidavit provided little factual detail from which to reconstruct the events and activities involved in her encounter with the deputies.

Ervin and Lilley were deputy constables on-duty at approximately 1:35 a.m. on September 28, 1992. The deputies were in a Stop–N–Go convenience store, when a man approached them and asked Deputy Lilley for a ride to a friend's car. The man said that Bonnie James had thrown beer on him. James had been to a nightclub behind the Stop–N–Go and seemed to be intoxicated.

In the deputies presence, James called the man a coward and tried to pick a fight with him. Deputy Ervin advised her to calm down or he would take her to jail. James said, "Take me to jail." Deputy Ervin asked Deputy Lilley to take James outside and learn her side of the story. James said, "I'm not going anywhere, I'm staying right here." She then called the man a coward, pushed him onto a canister of iced drinks, and began assaulting him. When Deputy Ervin tried to pull her away from the man, James turned and assaulted Ervin by butting her head into him, holding onto him, clawing his face, and damaging his eyeglasses.

The deputies tried to put James down onto the floor. Deputy Ervin lost his balance and both he and James fell. Ervin fell on his knee. James struck her head on the floor. When the deputies handcuffed her, James complained that the cuffs were too tight and continued fighting and kicking.

James sustained a cut on the head, broken collar bone, and dislocated shoulder. Officer Ervin injured his knee and sustained facial scratches.

On February 18, 1993, James sued Ervin and Lilley, in their individual capacities, for assault and negligence. On September 28, 1993, The trial court denied Ervin and Lilley's motion for summary judgment based on qualified immunity. They appeal.

In one point of error, Ervin and Lilley complain that the trial court erred in denying their motion for summary judgment, which was based on qualified immunity.

■ The denial of a summary judgment may be appealed when a court "denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state...." Tex. Civ.Prac. & Rem.Code Ann. § 51.014(5) (Vernon Supp.1994).

■ We apply the same standard of review for the denial of a summary judgment as for the granting of a summary judgment. The movant for summary judgment has the burden to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Nixon v. Mr. Property Management, Co., 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, we take evidence favorable to the non-movant as true. Id. We indulge every reasonable inference in favor of the non-movant and resolve any doubts in his favor. Id. If the movant's motion and summary judgment proof facially establishes his right to judgment as a matter of law, then the burden shifts to the non-movant to raise fact issues precluding summary judgment. See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979). A defendant, to be entitled to summary judgment, is required to disprove at least one essential element of each pleaded cause of action or otherwise show that plaintiff could not succeed on any theory pleaded. Rosas v. Buddies Food Store, 518 S.W.2d 534, 537 (Tex.1975). Ervin and Lilley based their motion for summary judgment on the affirmative defense of qualified immunity. A defendant is entitled to summary judgment on the basis on an affirmative defense if he expressly presents and conclusively proves each essential element of the affirmative defense. Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex.1972).

■ A government official or employee, who is sued in his individual capacity is immune from personal liability if (1) his status or action can be classified as quasi-judicial, (2) his actions were within the scope of his authority, and (3) he acted in good faith. See Chapman v. Gonzales, 824 S.W.2d 685, 687 (Tex.App.—Houston [14th Dist.] 1992, writ

denied). This immunity is based on the sound public policy which encourages public officers and employees to perform their duties without fear of personal liability for negligent or improper performance. *Id.*

Ervin and Lilley's summary judgment proof consisted of their personal affidavits and official incident reports. "A summary judgment may be based on uncontroverted testimonial evidence of an interested witness ... if the evidence is clear, positive and direct, otherwise credible and free from contradiction and inconsistencies, and could have been readily controverted." TEX.R.CIV.P. 166a(c). We find that Ervin and Lilley's proof meets these criteria.

### Quasi–Judicial Function?

The test for determining whether an official or employee acts in a quasi-judicial capacity centers on whether his acts are ministerial (no immunity) or discretionary (immunity). *See Esparza v. Diaz,* 802 S.W.2d 772, 779 (Tex.App.—Houston [14th Dist.] 1990, no writ). Discretionary actions are those that require personal deliberation, decision and judgment. Ministerial actions require obedience to order or the performance of a duty as to which the actor is left no choice. *Wyse v. Department of Pub. Safety,* 733 S.W.2d 224, 227 (Tex.App.—Waco 1986, writ ref'd n.r.e.).

Ervin and Lilley's proof shows that they were on-duty as deputy constables on the night of their encounter with James. Justice Cornyn, in his concurring opinion in *Travis v. City of Mesquite,* 830 S.W.2d 94 (Tex.1992), stated:

Nowhere else in public service is official immunity more appropriate or necessary than in police work. In their routine work, police officers must be free to make split-second judgments in good faith based on their experience and training, without fear of personal liability. To hold otherwise "would likely cause other peace officers under similar circumstances to flinch from acting because of fear of liability." [Citation omitted]. "Creating that potential does not serve the public interest." [Citation omitted]. Were there no immunity from personal liability under such circum-

stances, "the prudent would be reluctant to enter governmental service and even competent persons who entered public life would not be zealous in discharging their duties." [Citation omitted].

*City of Houston v. Newsom,* 858 S.W.2d 14, 17 (Tex.App.—Houston [14th Dist.] 1993, no writ), quoting *Travis,* 830 S.W.2d at 103.

We find that Ervin and Lilley's proof establishes as a matter of law that they were charged with quasi-judicial authority as law enforcement officers.

### Actions Within Scope of Authority?

The facts set out in Ervin and Lilley's affidavits as detailed above establish that Ervin's and Lilley's physical contact with James occurred while attempting to stop an assault-in-progress and while effecting an arrest. We find that these are functions within the range of discretionary authority granted peace officers.

### Did Officers Act in Good Faith?

A proper resolution of the good faith element of qualified immunity "requires an inquiry into the permissible intentions of the police officer and the reasonableness of the officer's actions in light of the risk of harm to the public." *See Newsom,* 858 S.W.2d at 17, quoting *Travis,* 830 S.W.2d at 104 (Cornyn, J., concurring).

The good faith determination has subjective and objective components. In taking action to maintain the peace, an officer acts in good faith when he (1) believes that the need to immediately subdue or apprehend a suspect is not substantially outweighed by a clear risk of harm to the public, and (2) a reasonably prudent police officer, under the same or similar circumstances, would believe that the need to immediately subdue or apprehend the suspect is not substantially outweighed by a clear risk of harm to the public. *See Newsom,* 858 S.W.2d at 17–18, quoting *Travis,* 830 S.W.2d at 104.

Ervin and Lilley's proof establishes that their actions in subduing James were in response to an assault-in-progress, initially on a private citizen, then on Deputy Ervin.

James was agitated, appeared intoxicated, and did not respond to the deputies' request to calm down. James' injuries occurred as the deputies attempted to get James onto the floor and under control. Deputy Ervin lost his balance, and he and James fell to the floor hard enough to injure both him and James. They stated that their duty as peace officers was to keep the peace and make arrests when warranted. They stated that they believed there was probable cause to arrest James for assault on the private citizen and Deputy Ervin. The deputies averred that they never intended to injure James, but only intended to stop her assault.

We find that Ervin and Lilley's proof establishes their subjective belief that they acted in good faith. *See Newsom*, 858 S.W.2d at 18. We further find that each deputy's affidavit and report establishes the objective good faith of the other deputy. *See id.*

Having found that Ervin and Lilley's summary judgment proof establishes as a matter of law all the elements of their affirmative defense of qualified immunity, we now look to James' response to determine if James raised any fact issues precluding summary judgment.

█ James' summary judgment proof consisted of her personal affidavit. But her affidavit offered no alternative version of the facts to controvert the facts detailed by Ervin and Lilley's summary judgment proof. Her affidavit contained conclusory statements such as (1) "I was assaulted ... before I offered any resistance...."; (2) "Defendants ... used greater force than was necessary to effect any arrest...."; (3) "They used excessive force...."; and (4) "There was no need to use the force that they used....". Her affidavit did not even name her alleged assailants or provide any descriptive *facts* to refute Ervin and Lilley's affirmative defense. James never averred that the deputies *intentionally* used greater force than was necessary or had any *ulterior motive or purpose* for doing so. We find that James' responsive summary judgment proof was insufficient to raise a fact issue on Ervin and Lilley's affirmative defense of qualified immunity. *See Hidalgo v. Surety Sav. & Loan Ass'n*, 487 S.W.2d 702, 703 (Tex.1972)

(conclusions are not competent summary judgment evidence).

James relies heavily on *Cronen v. Nix*, 611 S.W.2d 651 (Tex.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), *cert. denied*, 454 U.S. 1095, 102 S.Ct. 667, 70 L.Ed.2d 636 (1981). In *Cronen*, the court reversed a summary judgment in favor of peace officers accused by the plaintiff of false imprisonment. The court held that "in order to entitle themselves to a summary judgment, the appellee officers would need to prove that not only was the arrest and detention lawful, but that the period of time which appellant was detained was reasonable.... These are fact issues which are extremely difficult to prove as a matter of law." *Id.* at 653–54.

We do not find *Cronen* persuasive authority in the present case. *Cronen* did not discuss the substance of the summary judgment proof before it except to say that "in our case, such facts were not proved as a matter of law." *Id.* at 654. In the instant case, we have the detailed affidavits of two police officers setting out sufficient facts to establish as a matter of law that the arrest of James was justified and that the force used to subdue her was reasonable. James's proof was wholly conclusory and failed to controvert the deputies' version of the facts and so raise a fact issue. Furthermore, *Cronen* did not employ a qualified immunity analysis in arriving at its conclusion. Finally, *Cronen* was published before the legislature enacted, in 1989, Tex.Civ.Prac. & Rem.Code Ann. § 51.-014(5) (Vernon Supp.1994), which provided for the interlocutory appeal of a denial of a motion for summary judgment based on qualified immunity. The enactment of § 51.-014(5) signaled the importance that the legislature places on a deserving government official's ability to extricate himself from litigation at its earliest stages. *Cronen* seemed to dismiss, out-of-hand, the idea of proving qualified immunity by summary judgment proof. We believe that such an approach would render the qualified immunity defense illusory.

We conclude that Ervin and Lilley established their right to summary judgment as a matter of law on their affirmative defense of qualified official immunity. The trial court

erred in denying Ervin and Lilley's summary judgment. We reverse that ruling and render judgment for Ervin and Lilley.

SEARS, Justice, dissenting.

I respectfully dissent.

Appellee sued appellants for personal injuries sustained when appellants allegedly used excessive force to arrest her. Appellants' affidavits in support of their motion for summary judgment state basically that they arrested appellee because she was assaulting a male citizen, and that they "... never intended to injure Bonnie James in any way...." There is no summary judgment proof that the movants did *not* use excessive force, and there is no summary judgment proof that movants acted in "good faith."

Appellee's affidavit in opposition to appellants' motion for summary judgment states that she was assaulted by the defendants; that she was knocked to the floor by the defendants and was seriously injured; and that she sustained a fracture of the lateral portion of the clavicle and dislocation of the acromioclavicular joint. Appellee further swears in the affidavit that the appellants "... used greater force than was necessary ... used excessive force ... [and] there was no need to use the force that they used...."

The non-movant is entitled to have all reasonable inferences made and all doubts resolved in her favor. *University of Texas Health Science Center at Houston v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792 (Tex.1987). Governmental immunity is an affirmative defense and the movants must conclusively prove all the elements of the affirmative defense, as a matter of law, such that there is no genuine issue of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–311 (Tex.1984). This court has previously held that in order to establish immunity from personal liability, a government official or employee must establish that: (1) his status or action can be classified as quasi-judicial; (2) his actions were within the scope of his authority; and (3) he acted in good faith. *Chapman v. Gonzales*, 824 S.W.2d 685–687 (Tex.App.—Houston [14th Dist.]

1992, writ denied). Although the majority recognizes this hurdle, the opinion leaps the last hurdle for the movants. In dealing with the issue of good faith, the majority opinion finds that the movants' "proof establishes their *subjective* belief that they acted in good faith." (emphasis added) The problem with that statement is that: (1) there is *no* summary judgment proof establishing the "subjective" belief that the movants acted in good faith; and (2) there is *no* summary judgment proof of what others would do in the same or similar situation in order to show *objective* proof that they acted in good faith.

This court has previously dealt with governmental employee immunity in a summary judgment situation, and has found that the affidavits of the officers established "the objective good faith belief ...", and further, that the affidavit of a non-party to the offense found that the movants had "... in his expert opinion, acted in good faith and in compliance with department policy...." *City of Houston v. Newsom*, 858 S.W.2d 14, 18 (Tex.App.—Houston [14th Dist.] 1993, no writ). Therefore, in order to establish the affirmative defense in the *Newsom* case, the movant officers not only established their *subjective* belief that they acted in good faith, by *swearing* they acted in good faith in their affidavit, but, they further supplied an affidavit from a non-party showing the non-party's *objective* belief that the officers not only acted in good faith but in compliance with department policy. Clearly, we do not have such proof in the summary judgment appeal before us. Not only have the officers failed to allege, much less prove, "good faith" by proof of their *subjective* intent, but they also have failed to provide evidence of any *objective* compliance with the good faith requirement.

Justice Cornyn, in his concurring opinion in *Travis*[1], gave a detailed analysis of what a party claiming immunity must prove in order to support a finding of good faith. He stated:

A proper resolution of the good faith element in the affirmative defense of official immunity requires an inquiry into the permissible intentions of the police officer and

1. *Travis v. City of Mesquite*, 830 S.W.2d 94, 104 (Tex.1992).

the reasonableness of the officer's actions in light of the risk of harm to the public. His opinion indicates that both subjective *and* objective proof of intent are necessary to establish good faith. Justice Cornyn went on to state that an officer *fails* to act in good faith if:

(1) The officer knows that a clear risk of harm to the public in continuing the pursuit substantially outweighs the need to immediately apprehend the suspect (the subjective element); or,

(2) A reasonably prudent police officer, under the same or similar circumstances would know that the clear risk of harm to the public and continuing the pursuit substantially outweighs the need to immediately apprehend the suspect (the objective element).

Further, once the defendant establishes the prima facie case for an application of the official immunity, a plaintiff need only defeat one of the elements of the affirmative defense in order to defeat a summary judgment. *Id.* Although Justice Cornyn's opinion focused on police automobile chases, and Justice Robinson's *City of Houston v. Newsom (supra)*, case focused on the discharge of firearms, these standards should also apply to any claim of governmental immunity by a peace officer. In other words, appellee can defeat appellants' motion for summary judgment by showing either that the officers knew that there was a clear risk of harm to appellee that substantially outweighed the need to immediately apprehend her, *or,* that reasonably prudent police officers, under the same or similar circumstances, would have known that there was a clear risk of harm to appellee in continuing their aggressive attempts to apprehend her.

Appellee has without question stated facts sufficient to raise a fact question as to "good faith" by stating that: "... I was assaulted and seriously injured by the defendants before I offered any resistance to any act on their part.... I was knocked to the floor by the defendants and was seriously injured as a result and approximate cause of that assault by the defendants.... I sustained a fracture ... [a] dislocation.... [T]he defendants ... used greater force than was neces-

sary to effect an arrest.... [T]hey used excessive force against me and they caused the injuries ... these injuries are very serious and disabling.... [T]here was no need to use the force that they used against me nor to cause this type of injury...." I would find that this affidavit at least raises a fact question as to whether the appellants acted in good faith. Questions of intent, belief, or lack of intent or belief have been held to be uniquely fact questions for the trier of fact *after* considering all relevant evidence. *See Foreca S.A. v. GRD Dev. Co.,* 758 S.W.2d 744 (Tex.1988), and *Kielwein v. Gulf Nuclear Inc.,* 783 S.W.2d 746 (Tex. App.—Houston [14th Dist.] 1990, no writ).

Although I recognize that an important thrust of governmental immunity is to protect peace officers from claims by criminals of abusive handling, we must be careful to protect the right to seek redress when the force used by officers to effect an arrest outweighs the need to immediately apprehend the suspect, or, when a reasonably prudent officer would know that there was a clear risk of harm to the individual in continuing his actions.

In summation, appellants have failed to prove the affirmative defense of governmental immunity in that they have failed to prove conclusively that they acted in good faith, and that there is no genuine issue of material fact. *See Montgomery v. Kennedy, (supra),* 669 S.W.2d at 310–311. Unless the movants *conclusively* establish the affirmative defense, the non-movant plaintiff has no burden in response to a motion for summary judgment filed on the basis of an affirmative defense. *Torres v. Western Casualty & Sur. Co.* 457 S.W.2d 50, 52 (Tex.1970). Therefore, the fact that the majority finds appellees' affidavit in opposition to be conclusional, is of no moment. She didn't even have to file a controverting affidavit. I would affirm the judgment of the trial court.